### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 1:24-CV-12507 |
| v. | ) ) | |
| KPM ANALYTICS, INCORPORATED F/K/A STATERA ANALYTICS, INCORPORATED and KPM ANALYTICS NORTH AMERICA CORPORATION F/K/A PROCESS SENSORS CORPORATION | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

### COMPLAINT FOR DECLARATORY RELIEF

Federal Insurance Company ("Federal"), by way of this complaint for declaratory judgment against the defendants KPM Analytics, Incorporated f/k/a Statera Analytics, Incorporated ("KPM Analytics") and KPM Analytics North America Corporation f/k/a Process Sensors Corporation ("KPM Analytics North America") (collectively, "Defendants"), alleges and states:

### INTRODUCTION

1.      This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### JURISIDCTION AND VENUE

2.      This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

4031394_1

3.     An actual justiciable controversy between Federal and the Defendants exists within the meaning of 28 U.S.C. § 2201 regarding whether Federal has a duty to defend or indemnify the Defendants with respect to the action commenced against them by IEP Technologies, LLC ("IEP"), captioned *IEP Technologies, LLC v. KPM Analytics, Incorporated f/k/a Statera Analytics, Incorporated, et al.*, U.S. District Court for District of Massachusetts, Case No. 1:21-cv-10417 (the "Underlying Action"), as more particularly described below.  A true copy of the Complaint in the Underlying Action is attached hereto as Exhibit A.

4.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the subject insurance policies were sold in this judicial district, a substantial part of the events or omissions giving rise to this action occurred in this judicial district, and upon information and belief, the Defendants are residents of this judicial district.

## PARTIES

6.     Federal is an insurance company organized under the laws of the state of Indiana with a principal place of business in New Jersey.

7.     The Defendant KPM Analytics is, upon information and belief, a corporation organized under the laws of the state of Delaware, with its principal place of business in Westborough, Massachusetts.

8.     The Defendant KPM Analytics North America is, upon information and belief, a corporation organized under the laws of the state of Delaware, with its principal place of

2

business in Westborough, Massachusetts.  Upon information and belief, KPM Analytics North America is a wholly owned subsidiary of KPM Analytics.

## FACT ALLEGATIONS

9.      Federal incorporates by reference its allegations in the preceding paragraphs as if fully set forth herein.

### *The Policies*

10.      Federal issued a primary General Liability, bearing policy number 3605-23-12 BOS and containing a policy period from March 8, 2018 to March 8, 2019, to KPM Analytics (the "Primary Policy").

11.      A true and accurate copy of the Primary Policy is attached hereto as Exhibit B.

12.      Pursuant to an endorsement, KPM Analytics and Process Sensors Corp. ("PSC"), which, upon information and belief, changed its name to KPM Analytics North America, are Named Insureds on the Primary Policy.

13.      Federal also issued a Commercial Excess and Umbrella Liability Policy, bearing policy number 7818-77-14 and containing a policy period from March 8, 2018 to March 8, 2019, to KPM Analytics (the "Umbrella Policy"), which applies, subject to its terms and conditions, excess to the Primary Policy.

14.      A true and accurate copy of the Umbrella Policy is attached hereto as Exhibit C.

15.      Subject to its other terms, conditions, and exclusions, the "Bodily Injury And Property Damage Liability Coverage" of the Primary Policy provides coverage for "damages that the **insured** becomes legally obligated to pay by reason of liability:  imposed by law; or assumed in an **insured contract**; for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies."

3

16.     The Primary Policy defines "bodily injury" as:

**Bodily injury** means physical:

- injury;
- sickness; or
- disease;

sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time.  All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

17.     The Primary Policy defines "property damage" as:

**Property damage** means:

- physical injury to tangible property, including resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Tangible property does not include any software, data or other information that is in electronic form.

18.     Subject to its other terms, conditions, and exclusions, the "Advertising Injury And Personal Injury Liability Coverage" of the Primary Policy provides coverage for "damages that the **insured** becomes legally obligated to pay by reason of liability:  imposed by law; or assumed in an **insured contract**; for **advertising injury** or **personal injury** to which this coverage applies," but "[t]his coverage applies only to such **advertising injury** or **personal injury** caused by an offense that is *first committed during the policy period*."  (Emphasis by boldface original, emphasis by italics and underline added.).

19.     The Policy defines "personal injury" as:

**Personal injury** means injury, other than **bodily injury**, **property damage** or **advertising injury**, caused by an offense of:

4

    A.    false arrest, false detention or other false imprisonment;

    B.    malicious prosecution;

    C.    wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if committed by or on behalf of its landlord, lessor or owner;

    D.    electronic, oral, written or other publication of material that:

        1.    libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or

        2.    violates a person's right of privacy; or

    E.    discrimination, harassment or segregation based on a person's age, color, national origin, race, religion or sex.

20.    The Policy defines "advertising injury" as:

**Advertising injury** means injury, other than **bodily injury**, **property damage** or **personal injury**, sustained by a person or organization and caused by an offense of infringing, in that particular part of your **advertisement** about your goods, products or services, upon their:

- copyrighted **advertisement**; or
- registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

21.    The Policy defines "advertisement" as:

**Advertisement** means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services.

**Advertisement** does not include any e-mail address, Internet domain name or other electronic address or metalanguage.

22.    Under "Advertising Injury/Personal Injury Exclusions," the Primary Policy contains a Prior Offenses exclusion, which states:  "This insurance does not apply to **advertising injury** or **personal injury** arising out of any offense *first committed before the beginning of the policy period*."  (Emphasis by boldface original, emphasis by italics and underline added.).

23.    Subject to its other terms, conditions, and exclusions, the "Coverage/Excess Follow-Form Coverage A" of the Umbrella Policy applies only to "that part of **loss** to which this

coverage applies, which exceeds the applicable **underlying limits**[,]" and "[t]his coverage applies only if the triggering event that must happen during the policy period of the applicable **underlying insurance** happens during the policy period of this insurance."

24.     The "Coverage/Excess Follow-Form Coverage A" of the Umbrella Policy further states:

> This coverage will follow the terms and conditions of **underlying insurance** described in the Schedule Of Underlying Insurance, unless a term or condition contained in this coverage:
>
> - differs from any term or condition contained in the applicable **underlying insurance**; or
>
> - is not contained in the applicable **underlying insurance**.
>
> With respect to such exceptions described above, the terms and conditions contained in this coverage will apply, to the extent such terms and conditions provide less coverage than the terms and conditions of the applicable **underlying insurance**.
> ***

25.     The Umbrella Policy defines "underlying insurance" as:

> **Underlying insurance** means the coverages for the hazards described in the Schedule Of Underlying Insurance and the next renewal or replacement insurance thereof.

26.     The Primary Policy is described in the Schedule Of Underlying Insurance in the Umbrella Policy, and therefore, it constitutes "underlying insurance," as defined by the Umbrella Policy.

27.     The "Coverage/Excess Follow-Form Coverage A" of the Umbrella Policy contains an Underlying Insurance Exclusion, which states: "Notwithstanding anything to the contrary set forth in any other provision of this contract, this insurance does not apply to any liability or loss, cost or expense to which the terms and conditions of **underlying insurance** do not apply."

4031394_1

28.     The Coverages/Umbrella Coverage B of the Umbrella Policy contains two parts: "Bodily Injury And Property Damage Liability Coverage" and "Advertising Injury And Personal Injury Liability Coverage."

29.     Subject to its other terms, conditions, and exclusions, the "Bodily Injury And Property Damage Liability Coverage" of Coverages/Umbrella Coverage B under the Umbrella Policy provides coverage only for "**loss**" "for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies."

30.     The Umbrella Policy defines "bodily injury" as:

**Bodily injury** means physical:

- injury;
- sickness; or
- disease;

sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time.  All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

31.     The Umbrella Policy defines "property damage" as:

**Property damage** means:

- physical injury to tangible property, including resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

- loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

Tangible property does not include any software, data or other information that is in electronic form.

32.     Subject to its other terms, conditions, and exclusions, the "Advertising Injury And Personal Injury Liability Coverage" of Coverages/Umbrella Coverage B under the Umbrella

Policy provides coverage only for "**loss**" for "**advertising injury** or **personal injury** to which this coverage applies," but "[t]his coverage applies only to such **advertising injury** or **personal injury** caused by an offense that is *first committed during the policy period*."  (Emphasis by boldface original, emphasis by italics and underline added.).

33.    The Umbrella Policy defines "personal injury" as:

> **Personal injury** means injury, other than **bodily injury**, **property damage** or **advertising injury**, caused by an offense of:
>
> A.    false arrest, false detention or other false imprisonment;
> B.    malicious prosecution;
> C.    wrongful entry into, wrongful eviction of a person from or other violation of a person's right of private occupancy of a dwelling, premises or room that such person occupies, if committed by or on behalf of its landlord, lessor or owner;
> D.    electronic, oral, written or other publication of material that:
> > 1.    libels or slanders a person or organization (which does not include disparagement of goods, products, property or services); or
> > 2.    violates a person's right of privacy; or
> E.    discrimination, harassment or segregation based on a person's age, color, national origin, race, religion or sex.

34.    The Umbrella Policy defines "advertising injury" as:

> **Advertising injury** means injury, other than **bodily injury**, **property damage** or **personal injury**, sustained by a person or organization and caused by an offense of infringing, in that particular part of your **advertisement** about your goods, products or services, upon their:
>
> - copyrighted **advertisement**; or
> - registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

35.    The Umbrella Policy defines "advertisement" as:

> **Advertisement** means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services.
>
> **Advertisement** does not include any e-mail address, Internet domain name or other electronic address or metalanguage.

8

36.     The Umbrella Policy also contains a Prior Offenses exclusion, which states, "This insurance does not apply to **advertising injury** or **personal injury** arising out of any offense _first committed before the beginning of the policy period_."  (Emphasis by boldface original, emphasis by italics and underline added.).

37.     Federal issued a series of primary General Liability policies and Commercial Excess and Umbrella Liability policies for the annual consecutive policy periods subsequent to the expiration of the Primary Policy and the Umbrella Policy – i.e., from March 8, 2019 to September 30, 2021 – to KPM Analytics US Holding, Inc. (the "Subsequent Policies," and collectively with the Primary Policy and the Umbrella Policy, the "Policies").

38.     True and accurate copies of the Subsequent Policies are attached hereto as Exhibit D.1., Exhibit D.2., Exhibit D.3., Exhibit D.4., Exhibit D.5., Exhibit D.6, and Exhibit D.7.

39.     Under the Subsequent Policies, coverage for "**advertising injury**" is limited to "**advertising injury**" "caused by an offense that is _first committed during the policy period._" (Emphasis by boldface original, emphasis by italics and underline added.).

### _The Underlying Action_

40.     IEP commenced the Underlying Action against the Defendants on or about March 10, 2021, seeking damages and other relief for the Defendant's alleged infringement upon IEP's registered trademark in its mark – a hexagonal design mark – ("IEP's Mark" or "Plaintiff's Mark") – by the Defendants' use of a hexagonal design mark, alone and as part of the overall company logo for PSC (the "Defendants' Mark").  A side-by-side depiction of the Defendants' Mark and IEP's Mark, as depicted in the Complaint in the Underlying Action, is set forth below:

4031394_1

| Plaintiff's Mark | Defendants' Marks |
|---|---|
|  |  |
|  |  |

41.     IEP alleges that it has owned federal registered trademark rights in IEP's Mark since December 2, 2014 and common law trademark rights in IEP's Mark dating back to 2013.

42.     The Complaint in the Underlying Action alleges that, upon information and belief, the Defendants commenced use of the allegedly infringing Defendants' Mark "in or around February 2018."

43.     IEP alleges that the Defendants intentionally and willfully adopted the allegedly infringing Defendants' Mark to confuse consumers and trade off IEP's well-known brand and goodwill.

44.     The Complaint in the Underlying Action contains five counts:  (1) Federal Trademark Infringement, 15 U.S.C. § 1114; (2) Federal Unfair Competition and Designation of Origin, 15 U.S.C. § 1125(a); (3) Cancellation of U.S. Trademark Registration, No. 5,633,755; (4) Common Law Trademark Infringement and Unfair Competition; and (5) Violation of M.G.L. c. 93A.

45.     IEP seeks a permanent injunction against the Defendants' continued use of the Defendants' Mark, as such use is allegedly unauthorized, improper, and willful commercial use and exploitation of IEP's trademark in IEP's Mark, as well all damages and profits arising from

the Defendants' past, present, and future infringement, including all statutory damages as well as IEP's attorneys' fees and costs.

### _Federal's Provision of a Defense Subject to a Full Reservation of Rights_

46.     The Underlying Action does not allege any "bodily injury," as defined by the Policies.

47.     The Underlying Action does not allege any "property damage," as defined by the Policies.

48.     The Underlying Action does not allege any "personal injury," as defined by the Policies.

49.     The Underlying Action arguably alleges "advertising injury," insofar as the Complaint therein alleges that, by use of the Defendants' Mark in their "advertisement," the Defendants infringed upon IEP's "registered trademarked symbol" in IEP's Mark.

50.     However, as the forth above, the Policies "appl[y] only to such **advertising injury** . . . caused by an offense that is _first committed during the policy period_."  (Emphasis by boldface original, emphasis by italics and underline added.).

51.     The Complaint in the Underlying Action alleged that, upon information and belief, the Defendants' use of the allegedly infringing Defendants' Mark began _in or around February 2018_, which is before the Policies incepted on March 8, 2018.

52.     More specifically, as set for the above, the Primary Policy and the Umbrella Policy contain policy periods that incepted on March 8, 2018 and ended on March 8, 2019.  The policy periods of the Subsequent Policies cover the time period from March 8, 2019 to September 30, 2021.

53.     Due to the assertion in the Complaint in the Underlying Action that the Defendants commenced use of the allegedly infringing Defendants' Mark "*in or around* February 2018" and the qualification that said fact was "*upon information and belief*" only, Federal agreed to defend the Defendants against the Underlying Action under the Primary Policy pursuant to a full reservation of its rights, including without limitation the right to seek recoupment of attorneys' fees, expenses, and costs paid on behalf of the Defendants with respect to the Underlying Action if it was determined that the claims asserted therein were not covered by the Policies.  (Emphasis added.).

54.     Federal's reservation of rights included, but was not limited to, its right to disclaim a duty to indemnify, and to withdraw from the defense of the Defendants, if the offense that caused the "advertising injury" alleged in the Underlying Action was first committed before March 8, 2018, when the policy periods of the Primary Policy and the Umbrella Policy incepted, and the right to disclaim a duty to indemnify, and withdraw from the defense of the Defendants, pursuant to the Prior Offenses exclusion.

55.     True and accurate copies of Federal's reservation of rights letters dated June 18, 2021 and April 4, 2023 are attached hereto as Exhibit E.

56.     Federal specifically disclaimed any coverage obligation for the Underlying Action under the Subsequent Policies because, even construing the Complaint in the Underlying Action in the broadest of possible manners, the offense causing the alleged "advertising injury" – i.e., Defendants' use of the allegedly infringing Defendants' Mark – was not first committed during the periods of the Subsequent Policies, from March 8, 2019 to September 30, 2021.

***Discovery in the Underlying Action Establishes that, as Alleged in the Complaint in the Underlying Action, the Defendants' First Committed the Alleged Offense that Caused the Alleged "Advertising Injury" Before the Inception of the Policies, i.e. before March 8, 2018.***

57.     The discovery conducted in the Underlying Action has established that, as alleged in the Complaint in the Underlying Action, the alleged offense that caused the alleged "advertising injury" – i.e., Defendants' use of the allegedly infringing Defendants' Mark – was, in fact, "first committed" before the inception of the earliest of the Policies on March 8, 2018.

58.     Discovery in the Underlying Action establishing that the Defendants' alleged offense – i.e., infringing upon IEP's registered trademarked symbol in IEP's Mark – that caused the "advertising injury" alleged in the Underlying Action was first committed before March 8, 2018 includes, but is not limited to:

a.     IEP's First Supplemental Responses to the Defendants' First Set of Interrogatories, which state that (i) "[a]ccording to USPTO [i.e., United States Patent and Trademark Office] records, Defendants commenced using their [allegedly infringing Defendants' Mark] <u>in or around February 2018[,]</u>" (ii) Defendants' use of the allegedly infringing Defendants' Mark included "display and use [of] the Infringing Mark on their websites, social media, products, and in other marketing and promotional materials," and (iii) Defendant KPM North America applied to register the allegedly infringing Defendants' Mark with the USPTO ***<u>on June 1, 2017</u>***.  *See* IEP's First Supplemental Responses to the Defendants' First Set of Interrogatories, Response No. 2 at pp. 2, 3 (emphasis added).

59.     A true and accurate copy of IEP's First Supplemental Responses to the Defendants' First Set of Interrogatories is attached hereto as Exhibit F.

60.     Discovery in the Underlying Action establishing that the Defendants' alleged offense – i.e., infringing upon IEP's registered trademarked symbol in IEP's Mark – that caused the "advertising injury" alleged in the Underlying Action was first committed before March 8, 2018 also includes, but is not limited to, the following admissions made by the Defendants:

a.      In the Defendants' Second Supplemental Responses to IEP's Second Set of Interrogatories, the Defendants admitted that (i) in 2017, after acquiring PSC, KPM Analytics "initiated an effort to redesign branding" for PSC by creating a new mark, using Valerie Hoffman to create design options, (ii) the Defendants ultimately decided upon the Defendants' Mark as their new mark, and (iii) the Defendants filed a trademark application for the newly-adopted Defendants' Mark _on or about June 1, 2017_.  _See_ Defendants' Second Supplemental Responses to IEP's Second Set of Interrogatories, a true copy of which is attached as Exhibit G, No. 6 at 6, 7, 8; No. 7 at pp. 14, 15; No. 9 at pp. 23, 24, 25 (emphasis added).

b.      In the Defendants' First Supplemental Responses to IEP's Fourth Set of Interrogatories, KPM admitted that the Defendants' Mark were first used in connection with the identified products and services in U.S. commerce, including without limitation the sale or offer for sale of such goods and/or services, "_at least as early as February 2018_."  _See_ Defendants' First Supplemental Responses to IEP's Fourth Set of Interrogatories, a true copy of which is attached as Exhibit H, No. 13 at pp. 4-5; No. 14 at p. 7; and No. 15 at p. 9 (emphasis added).

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████



e.     The Defendants' document production in the Underlying Action includes a press

release *dated March 1, 2018*, issued by the Defendants, which states, "Process

Sensors Corporation (PSC), a KPM Analytics company . . . has unveiled a new

brand identity, logo and website that reflects the company's evolution." *See* KPM

Document Production, PSC Press Release dated March 1, 2018 (the "PSC March

1, 2018 Press Release"), a true copy of which is attached as Exhibit K, (emphasis

added). The PSC March 1, 2018 Press Release displays the allegedly infringing

Defendants' Mark as PSC's new logo. *Id.* The PSC March 1, 2018 Press Release

was, according to the Defendants' website ([https://www.processsensorsir.com/](https://www.processsensorsir.com/)),

"*[p]osted March 01, 2018* in *Company News*" on the Defendants' website for

viewing by the general public. *See* "Process Sensors Debuts New Look and

Website," ([https://www.processsensorsir.com/whats-new/company-news/process-](https://www.processsensorsir.com/whats-new/company-news/process-)

[sensors-debuts-new-look-and-website](https://www.processsensorsir.com/whats-new/company-news/process-sensors-debuts-new-look-and-website)), a true copy of which is attached as Exhibit

L (emphasis added).

15



61.    A true and accurate copy of Defendants' Second Supplemental Responses to IEP's Second Set of Interrogatories is attached hereto as Exhibit G.

62.    A true and accurate copy of Defendants' First Supplemental Responses to IEP's Fourth Set of Interrogatories is attached hereto as Exhibit H.



64.

65.    A true and accurate copy of the PSC March 1, 2018 Press Release is attached hereto as Exhibit K.

66.    A true and accurate copy of Process Sensors Debuts New Look and Website," (https://www.processsensorsir.com/whats-new/company-news/process-sensors-debuts-new-look-and-website), is attached hereto as Exhibit L.

4031394_1



70.     In addition, in the Defendants' Motion for Summary Judgment filed in the Underlying Action, the Defendants admitted that "KPM's first use of the PROCESS SENSORS CORPORATION & design mark ('KPM's mark') is at least as early as February 2018 in Classes 9, 37 and 41.  Ex. P, the '755 Registration."   Defendants' Statement of Material Facts L.R. 56.1, ¶ 77.

71.     A true and accurate copy of the Defendants' Statement of Material Facts L.R. 56.1, and Exhibit P thereto, is attached hereto as Exhibit P.

***There Is No Coverage for the Underlying Action under the Policies.***

72.     The liability asserted against the Defendants in the Underlying Action, as alleged in the Complaint in the Underlying Action and as demonstrated by the information obtained from discovery in the Underlying Action, does not fall within the Policies' insuring agreement because it does not allege "bodily injury," "property damage," or "personal injury," as defined by the Policies.

73.     The liability asserted against the Defendants in the Underlying Action, as alleged in the Complaint in the Underlying Action and as demonstrated by the information obtained from discovery in the Underlying Action, does not fall within the Policies' insuring agreement because it does not allege "advertising injury" caused by an offense – i.e., infringing upon IEP's

registered trademarked symbol – that was first committed during the policy periods of the Policies, from March 8, 2018 to September 30, 2021.

74.     The liability asserted against the Defendants in the Underlying Action, as alleged in the Complaint in the Underlying Action and as demonstrated by the information obtained from discovery in the Underlying Action, falls within the Policies' Prior Offenses Exclusion because it alleges that the injuries arise out of an offense – i.e., infringing upon IEP's registered trademarked symbol – that was first committed before the beginning of the policy periods of the Policies, i.e., before March 8, 2018.

75.     The Policies contain other terms, conditions, limitations, and exclusions that may further limit or preclude coverage.  Federal reserves the right to assert such provisions and raise additional coverage defenses as the facts warrant.

76.     Federal respectfully seeks the declaratory relief described below at this juncture because the allegations and circumstances of the Underlying Action render the coverage issues alleged herein ripe and amenable to judicial determination.

## COUNT I

### Declaratory Judgment – No Duty to Defend or Indemnify

77.     Federal incorporates by reference its allegations in the preceding paragraphs as if fully set forth herein.

78.     The Defendants have each demanded coverage under one or more of the Policies for defense against the Underlying Action and for indemnification for any settlement they may enter into or judgment that may enter against them in the Underlying Action.

79.     Federal believes that no coverage is owed under the Policies for the liability asserted against the Defendants in the Underlying Action.

80.     An actual controversy has arisen between Federal, on the one hand, and each of the Defendants, on the other hand, as to their respective rights and obligations under the Policies, including specifically whether the Policies cover the liability alleged in the Underlying Action. This controversy encompasses –among other things – the following issues:

a.      whether the Underlying Action alleges "bodily injury," "property damage," and/or "personal injury";

b.      whether the Underlying Action alleges "advertising injury" caused by an offense that was first committed during the policy periods of the Policies; and

c.      whether the Underlying Action alleges liability against the Defendants that falls within the Prior Offenses Exclusion.

81.     A binding judicial declaration determining the rights and obligations of Federal and the Defendants under the Policies with respect to the Underlying Action is necessary, will resolve the parties' disagreement, and will facilitate any settlement efforts in the Underlying Action.

82.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Federal respectfully requests that the Court declare the following:

a.      the Underlying Action does not allege "bodily injury," "property damage," or "personal injury";

b.      the Underlying Action does not allege "advertising injury" caused by an offense that was first committed during the policy periods of the Policies;

c.      the Underlying Action alleges liability against the Defendants that falls within the Prior Offenses Exclusion;

d.      Federal has no duty to defend any of the Defendants against the Underlying Action under any of the Policies;

e.      Federal has no duty to indemnify any of the Defendants against the Underlying Action under any of the Policies; and

f.      Federal has no duty to provide any form of insurance benefits to the Defendants in connection with the Underlying Action; and

g.      Federal is entitled to recoupment from the Defendants for all attorneys' fees, costs, and expenses it paid to or on behalf of the Defendants with respect to the Underlying Action.

## COUNT II

### Declaratory Judgment – Other Coverage Defenses

83.     Federal incorporates by reference its allegations in the preceding paragraphs as if fully set forth herein.

84.     As set forth above, the Defendants have each demanded coverage under one or more of the Policies for defense against the Underlying Action and for indemnification for any settlement they may enter into or judgment that may enter against them in the Underlying Action.

85.     Federal believes that no coverage is owed under the Policies for the liability asserted against the Defendants in the Underlying Action.

86.     An actual controversy has arisen between Federal, on the one hand, and each of the Defendants, on the other hand, as to their respective rights and obligations under the Policies, including specifically whether the Policies cover the liability alleged in the Underlying Action. This controversy encompasses –among other things – the following issues:

4031394_1

a.  to the extent coverage is otherwise available for the Underlying Action under one or more of the Policies, which Federal expressly denies, whether coverage is limited and/or eliminated by the Intellectual Property Laws Or Rights Exclusion;

b.  to the extent coverage is otherwise available for the Underlying Action under one or more of the Policies, which Federal expressly denies, whether the injunctive relief, declaratory relief, and other non-monetary relief sought against the Defendants in the Underlying Action are covered "damages" to which coverage under the Policies applies;

c.  to the extent coverage is otherwise available for the Underlying Action under one or more of the Policies, which Federal expressly denies, whether coverage is limited and/or eliminated by the Expected or Intended Injury Exclusion;

d.  to the extent coverage is otherwise available for the Underlying Action under one or more of the Policies, which Federal expressly denies, whether coverage is limited and/or eliminated by the Continuing Offenses Exclusion; and

e.  to the extent coverage is otherwise available for the Underlying Action under one or more of the Policies, which Federal expressly denies, whether the multiple, exemplary, and punitive damages sought in the Underlying Action are uninsurable under Massachusetts law.

87.  A binding judicial declaration determining the rights and obligations of Federal and the Defendants under the Policies with respect to the Underlying Action is necessary, will resolve the parties' disagreement, and will facilitate any settlement efforts in the Underlying Action.

88.     Pursuant to 28 U.S.C. §§ 2201 and 2202, Federal respectfully requests that the Court declare the following:

a.      to the extent coverage is otherwise available for the Underlying Action under one or more of the Policies, which Federal expressly denies, the Intellectual Property Laws Or Rights Exclusion applies to limit and/or eliminate coverage for the damages, if any, awarded in the Underlying Action;

b.      to the extent coverage is otherwise available for the Underlying Action under one or more of the Policies, which Federal expressly denies, the injunctive relief, declaratory relief, and other non-monetary relief sought against the Defendants in the Underlying Action are not covered "damages" to which coverage under the Policies applies;

c.      to the extent coverage is otherwise available for the Underlying Action under one or more of the Policies, which Federal expressly denies, the Expected or Intended Injury Exclusion applies to limit and/or eliminate coverage for the damages, if any, awarded in the Underlying Action;

d.      to the extent coverage is otherwise available for the Underlying Action under one or more of the Policies, which Federal expressly denies, the Continuing Offenses Exclusion applies to limit and/or eliminate coverage for the damages, if any, awarded in the Underlying Action; and

e.      to the extent coverage is otherwise available for the Underlying Action under one or more of the Policies, which Federal expressly denies, the multiple, exemplary, and punitive damages sought in the Underlying Action are uninsurable as a matter of public policy under Massachusetts law.

## REQUEST FOR RELIEF

WHEREFORE, Federal respectfully requests that the Court:

(1)     grant Federal's request for declaratory relief and enter the declaratory judgments

        stated and requested in Counts I and II of this Complaint above;

(2)     award Federal an amount equal to all attorneys' fees, costs, and expenses it paid

        to or on behalf of the Defendants with respect to the Underlying Action;

(3)     award Federal its interest, costs, and attorneys' fees; and

(4)     grant such other and further relief in favor of Federal as is just and appropriate.

## JURY TRIAL DEMAND

Federal a trial by jury on any issue presented in this matter that is properly so triable.

Respectfully submitted,
FEDERAL INSURANCE COMPANY,
By Its attorneys,

*/s/ John J. McGivney*
*/s/ Kara A. Loridas*

John J. McGivney (BBO # 333510)
Kara A. Loridas (BBO # 681727)
RUBIN AND RUDMAN LLP
53 State Street
Boston, MA  02109
(617) 330-7000
jmcgivney@rubinrudman.com
kloridas@rubinrudman.com

4031394_1