# EXHIBIT E

 Chubb North America
555 Long Wharf Drive, New Haven, CT 06511
Phone: (203) 782-4173   Fax: (800) 664-1765
E-mail: rthompson@chubb.com

**CERTIFIED MAIL**

June 18, 2021

Carey Ross – via email only
KPM Analytics
cross@kpmanalytics.com

| RE: | Insured: | KPM Analytics |
|---|---|---|
| | Policy No(s): | 3605-23-12 |
| | | 7818-77-14 |
| | Company: | Federal Insurance Company |
| | Claim Ref. No: | 040521016176 |
| | Case Name: | IEP Technologies, LLC v. KPM Analytics, Incorporated f/k/a Statera Analytics, Incorporated, et al |
| | Case No: | 1:21-cv-10417 |
| | Venue: | United States District Court, District of Massachusetts |

Dear Mr. Ross:

Please allow this letter to acknowledge receipt by Federal Insurance Company ("Chubb") of the above referenced lawsuit filed by IEP Technologies, LLC ("IEP") against KPM Analytics, Incorporated f/k/a Statera Analytics, Incorporated and KPM Analytics North America Corporation f/k/a Process Sensors Corporation (collectively "the Defendants") on 3/10/2021.

Chubb has reviewed this matter for the purpose of analyzing coverage under the above referenced policies. Although Chubb's investigation of this matter is continuing, we want to advise you that the policies provide a defense obligation to the Defendants in this case. The basis of our position is set forth below.

**The Complaint**

The Complaint alleges that beginning in February 2018, the defendant's began infringing on IEP's registered trademark. On March 27, 2020, IEP, through its attorneys, sent Defendants a letter placing them on notice of IEP's rights and long-term use and ownership of IEP's Mark, as well as demanding that Defendants cease and desist from all use of the Infringing Marks in any infringing manner. On May 6, 2020, Defendants refused in writing to comply with IEP's demands. In July 2020, IEP reiterated its demand that Defendants cease use of the Infringing Marks. Defendants refused to do so, necessitating the filing of this complaint. It's alleged that Defendants intentionally and willfully adopted the Infringing Mark to confuse consumers and trade off IEP's well-known brand and good will.

The complaint is plead in 5 counts: 1. Federal Trademark Infringement 15 U.S.C. § 1114; 2. Federal Unfair Competition and False Designation of Origin 15 U.S.C. § 1125(a); 3. Cancellation of U.S. Trademark Registration No. 5,633,755; 4. Common Law Trademark Infringement and Unfair Competition; and 5. Violation of M.G.L. c. 93A.  IEP seeks a permanent injunction against Defendants' continued unauthorized, improper and willful commercial use and exploitation of IEP's trademarks and all damages and profits arising from Defendants' past, present, and future infringement and unfair competition, including all statutory damages, as well as Plaintiff's attorneys' fees and costs.

**The Policies**

Chubb issued to KPM Analytics a Customarq Classic Insurance Policy 3605-23-12 (the "General Liability policy") which provides relevant limits of $1,000,000 each occurrence and a $1,000,000 Advertising Injury and Personal Injury aggregate limit. The policy was written on form 80-02-2000 (4-01), along with endorsements. Chubb also issued to KPM Analytics a Chubb Commercial Excess and Umbrella policy 7818-77-14 (the "Umbrella Policy") with provides limits of $2,000,000

each occurrence and a $2,000,000 Advertising Injury and Personal Injury aggregate limit. The policy was written of form 07-02-0815 (7-01), along with endorsements. Both policies are in effect from 3/8/2018 to 3/8/2019. The defendants qualify as insured under the policies.

**Analysis of Provisions Relevant to the Claim**

A.   **Potentially Covered Claims**

The above policies provide coverage for bodily injury or property damage caused by an occurrence as well as advertising injury and personal injury. In that the plaintiff is alleging trademark infringement, the policy's definition of advertising injury is triggered.

B.   **Defense Will Be Provided Under the Policies**

The above referenced General Liability policy contains a duty to defend covered matters. Along these lines, we are pleased to advise that Chubb has retained Andrew Crain of Thomas Horstemeyer, LLP to defend the defendants subject to this reservation of rights.

C.   **Potential Coverage Issues**

As indicated, the damages sought for trademark infringement fall within the definition of advertising injury under the General Liability policy. However, there is no coverage for the claims seeking unfair competition, cancellation of the trademark registration and false designation of origin counts. In addition, the exclusion entitled *Expected Or Intended Injury* applies to negate coverage for the willful commercial use and exploitation of IRP's trademarks. Additionally, the exclusion entitled *Prior Offenses* negates coverage for advertising injury arising out of an offense first committed before the beginning of the policy period.

The claims seeking permanent injunctions are not covered because they do not fall within the insuring agreement, as they do not seek insurable damages, nor do they constitute bodily Injury, property damage or personal and advertising Injury. Also not covered are the claims seeking non-monetary damages.

Finally, there are claims seeking both treble and/or enhanced damages and punitive and exemplary damages. Massachusetts courts have not determined whether these types of damages are insurable. Therefore, we reserve the right to disclaim coverage for these damages in the event a Massachusetts court determines they are not insurable.

The Umbrella policy contains two insuring agreements. Coverage A provides, in large part, excess follow-form insurance and Coverage B provides umbrella insurance. In light of the follow-form provisions under Coverage A of the Umbrella policy, and the fact that in this case no contrary provisions apply, Chubb must respectfully reserve its rights under Coverage A for the same reasons as outlined above. In addition, the exclusion entitled Underlying *Insurance Exclusions* would also apply with respect to Coverage A.

Coverage B is stand-alone coverage, and Coverage B does not apply to any claims covered by Coverage A. There are no alleged damages that fall within the insuring agreement of Coverage B that do not fall within the insuring agreement of the general liability policy and Coverage A. As such, there is no coverage under Coverage B. Therefore, Chubb will provide coverage under the Umbrella policy on a follow form basis to the coverage as outlined under the General Liability Insurance already explained in this letter.

D.   **Mutual Obligations Going Forward**

While Chubb is defending this matter, we remind you that the Policy requires KPM Analytics to cooperate with us in the defense. KPM Analytics must obtain our prior consent before offering or agreeing to pay in order to settle any Claim. Therefore, all settlement demands, offers or proposals made by or contemplated by KPM Analytics should be conveyed to us before any action is taken. We also ask that your defense counsel provide periodic updates on status of this case, as well as copies of significant correspondence, documents, and court filings on an ongoing basis. Please consider this a standing request**.**

**E.     Additional Information and/or Coverage Issues**

In summary, Chubb agrees to defend the Complaint subject to the reservation of rights, while continuing to investigate and evaluate any coverage obligations under the policies. Any judgment or settlement obtained by the plaintiffs that falls outside the insuring agreements or within the exclusionary language of the policies shall be the responsibility of defendants and not that of Chubb. The analysis of coverage outlined herein is not meant to be exhaustive.

We reserve the right to re-examine and re-analyze all coverage issues involved and not merely those raised by any additional information or evidence. By limiting policy references to those cited, we do not waive any other policy provisions. We are prepared to re-evaluate our position should the Complaints be amended, and/or if there are any material changes in the allegations or in the facts. If you have any additional information or coverage theories that you believe may have bearing upon our analysis of coverage in this matter, please advise us immediately for our further consideration.

We hope this letter was helpful in identifying for you the potential coverage issues for this claim.  If you have any questions, however, or disagree with any aspect of the foregoing position or analysis, please do not hesitate to contact the undersigned right away at (203) 782-4173.

Should you wish to take this matter up with the Massachusetts Division of Insurance, you may file with the department either on its website at www.mass.gov/orgs/division-of-insurance or you may write to Massachusetts Division of Insurance, 1000 Washington Street, Suite 810, Boston, MA 02118.  The toll-free telephone number is (877) 563-4467.

If you have any questions, or would like to discuss this matter further, please contact me directly at (203) 782-4173 during normal business hours or by email at rthompson@chubb.com.

Sincerely,

Claim Director
Chubb North America Claims


cc:     Brian Mitchell – via email only
        KPM Analytics
        bmitchell@kpmanalytics.com

        Ron Geis – via email only
        KPM Analytics
        rgeis@kpmanalytics.com

        Amy Crain – via email only
        Arthur J. Gallagher
        amy_crain@ajg.com



Chubb North America
555 Long Wharf Drive, New Haven, CT 06511
Phone: (203) 782-4173   Fax: (800) 664-1765
E-mail: rthompson@chubb.com

April 4, 2023

**Via Email Only**

Carey Ross
KPM Analytics
cross@kpmanalytics.com

|  | RE: | Insured: | KPM Analytics |
|---|---|---|---|
|  |  | Policy Nos.: | 3605-23-12 BOS (Primary) |
|  |  |  | 7818-77-14 (Umbrella) |
|  |  | Company: | Federal Insurance Company |
|  |  | Claim No.: | 040521016176 |
|  |  | Civil Action: | *IEP Technologies, LLC v. KPM Analytics, Incorporated f/k/a Statera Analytics, Incorporated, et al.*, U.S. District Court for District of Massachusetts, Case No. 1:21-cv-10417 |

Dear Ms. Ross:

I write on behalf of Federal Insurance Company ("Chubb") regarding the above-referenced matter (the Civil Action). The Civil Action was brought by IEP Technologies, LLC against KPM Analytics, Incorporated f/k/a Statera Analytics, Incorporated ("KPM Analytics") and KPM Analytics North America Corporation f/k/a Process Sensors Corporation ("KPM Analytics North America") (collectively, the "Defendants").

This correspondence will supplement any prior communications to you regarding Chubb's coverage position in this matter, including without limitation, my letter to you dated June 18, 2021. Chubb does not waive and specifically reserves all rights set forth in my June 18, 2021 letter.

Chubb issued the above-referenced policies to KPM Analytics, consisting of a Customarq Classic Insurance Policy, bearing policy no. 3605-23-12 BOS with a policy period from March 8, 2018 from March 8, 2019 (the "Primary Policy"), and a Chubb Commercial Excess and Umbrella Policy, bearing policy 7818-77-14 with a policy period from March 8, 2018 to March 8, 2019 (the "Umbrella Policy," and collectively, the "Policies"). As you know, Chubb is currently providing the Defendants with a defense against the Civil Action under the Primary Policy subject to a full and complete reservation of rights, which includes the right to disclaim the duty to indemnify and to withdraw from the defense if it is determined that the claims asserted therein do not fall within the coverage afforded by the Policies.

To date, Chubb has been provided with copies of only certain discovery produced in the Civil Action and only certain information about the defense of the Defendants against the Civil Action. Chubb believes that the information provided to it to date is incomplete and has included a request on the last page of this letter for additional discovery and other information. Nevertheless, Chubb would like to take this opportunity to provide the Defendants with this supplemental explanation of its coverage position. As explained below, Chubb will continue to provide a defense to the Defendants with respect to the Civil Action, subject to a full and complete reservation of rights. Chubb specifically reserves the right to disclaim the duty to indemnify and to withdraw from the defense of the Defendants in the Civil Action on the bases discussed below. Chubb also reserves the right to seek declaratory relief of its obligations, if any, under the Policies with respect to the Civil Action.

**The Civil Action**

IEP commenced the Civil Action against the Defendants on March 10, 2021. The Complaint in the Civil Action alleges that, beginning in February 2018, the Defendants began infringing on IEP's registered trademark in a mark, in which IEP allegedly has owned federal registered trademark rights since December 2, 2014 and has allegedly owned common law trademark rights dating back to its alleged uninterrupted use of the mark

since 2013. It is alleged that the Defendants intentionally and willfully adopted the infringing mark to confuse consumers and trade off IEP's well-known brand and goodwill.

The Complaint contains five counts: (1) Federal Trademark Infringement, 15 U.S.C. § 1114; (2) Federal Designation of Origin, 15 U.S.C. § 1125(a); (3) Cancellation of U.S. Trademark Registration, No. 5,633,755; (4) Common Law Trademark Infringement and Unfair Competition; and (5) Violation of M.G.L. c. 93A. IEP seeks a permanent injunction against the Defendants' alleged continued unauthorized, improper, and willful commercial use and exploitation of IEP's trademark and all damages and profits arising from the Defendants' past, present, and future infringement and unfair competition, including all statutory damages as well as IEP's attorneys' fees and costs.

## The Policies

Chubb issued the Policies – consisting of the Primary Policy and the Umbrella Policy – to KPM Analytics for the policy period from March 8, 2018 to March 8, 2019. Process Sensors Corp., the alleged former name of the defendant KPM Analytics North America, is a Named Insured on the Policies. The Primary Policy is subject to a limit of liability of $1,000,000 for Advertising Injury and Personal Injury Aggregate, and was written on form 80-02-2000 (4-01), along with endorsements. The Umbrella Policy is subject to a limit of $2,000,000 for Advertising Injury and Personal Injury Aggregate, and was written on form 07-02-0815 (7-01), along with endorsements.

## Coverage Position

Subject to its other terms, conditions, and exclusions, the Primary Policy provides coverage for "damages that the **insured** becomes legally obligated to pay by reason of liability: imposed by law; or assumed in an **insured contract**; for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies." The Civil Action does not involve alleged "bodily injury" – which is defined as "physical injury, sickness, or disease sustained by a person" – or "property damage" – which is defined as "physical injury to tangible property" or "loss of use of tangible property" – as those terms are defined in the Primary Policy.

Subject to its other terms, conditions, and exclusions, the Primary Policy also provides coverage for "damages that the **insured** becomes legally obligated to pay by reason of liability: imposed by law; or assumed in an **insured contract**; for **advertising injury** or **personal injury** to which this coverage applies," but "[t]his coverage applies only to such **advertising injury** or **personal injury** caused by an offense that is first committed during the policy period." The Civil Action does not allege "personal injury," as that term is defined in the Primary Policy. "Advertising injury" is defined under the Primary Policy as:

> **Advertising injury** means injury, other than **bodily injury**, **property damage** or **personal injury**, sustained by a person or organization and caused by an offense of infringing, in that particular part of your **advertisement** about your goods, products or services, upon their:
> - copyrighted **advertisement**; or
> - registered collective mark, registered service mark or other registered trademarked name, slogan, symbol or title.

"Advertisement" is defined under the Primary Policy as:

> **Advertisement** means an electronic, oral, written or other notice, about goods, products or services, designed for the specific purpose of attracting the general public or a specific market segment to use such goods, products or services.
>
> **Advertisement** does not include any e-mail address, Internet domain name or other electronic address or metalanguage.

The Civil Action, insofar as it may allege infringement in the Defendants' "advertisement" upon IEP's "registered trademark symbol," alleges "advertising injury." However, there is no coverage under the Primary Policy to the extent that the damages alleged or awarded in the Civil Action are not because of "advertising

injury," including without limitation if the alleged infringement was not in the Defendants' "advertisement" as that term is defined in the policy.

Further, the Primary Policy "applies only to such advertising injury or personal injury caused by an offense that is first committed during the policy period," which began on March 8, 2018 and ended on March 8, 2019. The Civil Action alleges that the Defendants' alleged use of the infringing mark began in February 2018, before the Primary Policy incepted. There is no coverage if, as alleged in the Complaint in the Civil Action, the offense that caused the "advertising injury" was first committed before the Primary Policy incepted on March 8, 2018. Further, there is no coverage for the Civil Action under any primary policies or umbrella policies issued by Chubb that are renewals of the Policies or were otherwise issued for policy periods subsequent to the March 8, 2018 to March 8, 2019 policy period, as no offense causing "advertising injury," as alleged in the Complaint, was first committed during the periods of these policies.

In addition, the Primary Policy contains a Prior Offenses exclusion, which states: "This insurance does not apply to advertising injury or personal injury arising out of any offense first committed before the beginning of the policy period." There is no coverage under the Primary Policy for any damages falling within the Prior Offenses exclusion, and Chubb reserves the right to further limit its coverage obligation pursuant to this exclusion.

Further, the Primary Policy contains a Continuing Offenses exclusion, which states:

This insurance does not apply to **advertising injury** or **personal injury** that arises out of that part of an offense that continues or resumes after the later of the end of the policy period of:

A. this insurance; or
B. a subsequent, continuous renewal or replacement of this insurance, that:
   1. is issued to you by us or by an affiliate of ours;
   2. remains in force while the offense continues; and
   3. would otherwise apply to **advertising injury** and **personal injury**.

Chubb reserves all of its rights pursuant to this exclusion. Pursuant to this exclusion, even if the offense causing "advertising injury" was first committed during the period of the Primary Policy, there is no coverage under the Primary Policy for any damages because of "advertising injury" that arises out of that part of the offense that continued or resumed after the last of the subsequent policies issued by Chubb to KPM Analytics US Holding, Inc. that would otherwise apply to such "advertising injury" expired.

The Primary Policy applies only to damages that the insured becomes legally obligated to pay. The claims seeking injunctive relief, declaratory relief, and the ordering of cancellation of any registered trademark(s) held by the Defendants are not covered because they do not fall within the insuring agreement of the Primary Policy, as they do not seek damages. Any other claims seeking non-monetary relief also are not covered by the Primary Policy.

Further, the Primary Policy contains an Intellectual Property Laws Or Rights exclusion, which states:

With respect to all coverages under this contract:

A. this insurance does not apply to any damages, loss, cost or expense arising out of, giving rise to or any way related to any actual, alleged or threatened:
   1. assertion; or
   2. infringement or violation;
   by any person or organization (including any **insured**) of any **intellectual property law or right**.
B. further, this insurance does not apply to the entirety of all allegations in any claim or **suit**, if such claim or **suit** includes an allegation of or a reference to an infringement or violation of any **intellectual property law or right**, even if this insurance would otherwise apply to any part of the allegations in the claim or **suit**.

      C.      this exclusion applies unless the only infringement or violation of an **intellectual property law or right** is an offense described in the definition of **advertising injury** to which this insurance applies.

The following definition is added to this policy and replaces any similar definition contained therein.

**Intellectual property law or right** means any:
- certification mark, copyright, patent or trademark (including collective or service marks);
- right to, or judicial or statutory law recognizing an interest in, any trade secret or confidential or proprietary non-personal information;
- other right to, or judicial or statutory law recognizing an interest in, any expression, idea, likeness, name, slogan, style of doing business, symbol, title, trade dress or other intellectual property; or
- other judicial or statutory law concerning piracy, passing off or similar practices.

The "advertising injury" alleged in the Civil Action is limited to the Defendants' alleged infringement, in their "advertisement," upon IEP's "registered trademark symbol." To the extent that the Civil Action involves alleged infringement or violation of any "intellectual property law or right" that is not an offense described in the definition of "advertising injury" – i.e., not a "registered trademark symbol" – the Intellectual Property Laws Or Rights exclusion would bar coverage for damages arising out of such infringement or violation. In such a circumstance, the Intellectual Property Laws Or Rights exclusion would also bar coverage for the entirety of all allegations in the Civil Action, even if the Primary Policy would otherwise apply to any part of the allegations in the Civil Action.

Further, the Expected or Intended Injury exclusion applies to negate coverage for any "advertising injury" "arising out of an offense, committed by or on behalf of the insured, that: is intended by such insured; or would be expected from the standpoint of a reasonable person in the circumstances of such inured; to cause injury." This exclusion bars coverage for any intentional and/or willful adoption of the infringing mark by the Defendants and any other damages for "advertising injury" arising out of conduct that is intended or expected, from the standpoint of a reasonable person, by the Defendants to cause injury. Chubb also reserves its right to deny coverage for the Civil Action based on the Continuing Offenses exclusion. To the extent any "advertising injury" arises out of an offense that continues or resumes after the later of the end of the Policies or any renewal of the Policies issued by Chubb to the Defendants, there is no coverage for the "advertising injury" arising out of that part of the offense.

In addition, the Civil Action contains claims seeking multiple, exemplary, and punitive damages. Chubb reserves the right to disclaim coverage for such damages to the extent that such damages are not insurable under Massachusetts law.

The Umbrella Policy contains two insurance agreements. Coverage A provides, in large part, excess follow-form insurance, and Coverage B provides umbrella insurance. In light of the follow-form provisions under Coverage A of the Umbrella Policy, and the fact that, as it pertains to the Civil Action, the policy contains no contrary provisions, Chubb must respectfully reserve its rights under Coverage A for the same reasons as outlined above. In addition, the exclusion in the Umbrella Policy entitled Underlying Insurance Exclusions also applies to Coverage A.

Coverage B of the Umbrella Policy is stand-alone coverage, and Coverage B does not apply to any claims covered by Coverage A. There are no alleged damages that fall within the insuring agreement of Coverage B that do not fall within the insuring agreement of Primary Policy and Coverage A of the Umbrella Policy. As such, there is no coverage under Coverage B. Therefore, Chubb will provide coverage under the Umbrella Policy, if at all, on a follow-form basis to the coverage outlined under the Primary Policy already explained in this letter.

## Mutual Obligations Going Forward

While Chubb is defending the Defendants in the Civil Action, Chubb continues to remind you that the Defendants have an obligation under the Policies to cooperate with Chubb in the defense. The Defendants must

obtain Chubb's prior consent before offering or agreeing to pay in order to settle any claim.  Therefore, all settlement demands, offers, or proposals made by or contemplated by the Defendants should be conveyed to Chubb before any action is taken.  Chubb also reiterates its standing request for periodic updates on the status of the case from defense counsel, as well as copies of all discovery produced in the Civil Action and all substantive correspondence, court filings, and court orders on an ongoing basis.

**Conclusion**

In summary, Chubb will continue to provide a defense to the Defendants with respect to the Civil Action, subject to a full and complete reservation of rights, while continuing to investigate and evaluate any coverage obligations under the Policies.  Any judgment or settlement obtained by IEP that falls outside of the insuring agreements or within the exclusionary language of the Policies shall be the responsibility of the Defendants and not that of Chubb.

Chubb also reserves the right to seek recoupment of attorneys' fees, costs, and expenses paid in the defense of the Defendants against the Civil Action, including without limitation fees, costs, and expenses incurred or expended with respect to non-covered claims, if it is determined that it is entitled to such recoupment.

So that Chubb may continue its investigation of this matter, it requests that the Defendants promptly provide it with the following information:

- Copies of all discovery produced in the Civil Action and all substantive correspondence, court filings, and court orders in the Civil Action.  Chubb has also conveyed this request to defense counsel, Andrew Crain of Thomas Horstemeyer.
- Copies of any excess or umbrella liability policy(ies) that apply excess over the commercial general liability policy no. PAC 0479226 issued by Great American Insurance Company of New York, for the policy period from March 8, 2017 to March 8, 2018, and any coverage position letter(s) regarding the Civil Action issued by such carrier(s)
- Information regarding any other insurance carriers to which the Complaint was tendered by the Defendants or on their behalf; and
- Copies of any coverage position letter(s) regarding this matter issued to, or regarding coverage for, you from any other insurance carrier.

The analysis of coverage outlined herein is not meant to be exhaustive.  We reserve the right to re-examine and re-analyze all coverage issues involved and not merely those raised by any additional information or evidence.  Chubb reserves the right to assert additional reasons for disclaiming coverage based upon the terms, conditions, exclusions and limitations contained in the insurance contract and/or based upon the law of the facts.  Nothing contained herein should be construed as a waiver of our right to assert additional grounds for disclaiming coverage, whether now known or discovered in the future.

We are prepared to re-evaluate our position if there are any material changes in the allegations or in the facts.  If you have any additional information or coverage theories that you believe may have bearing upon our analysis of coverage in this matter, please advise us immediately for our further consideration.

Sincerely,

**Robert Thompson Jr.**
Claim Director

Chubb North America Claims

cc:     Brian Mitchell – via email only
        KPM Analytics
        bmitchell@kpmanalytics.com

        Ron Geis – via email only
        KPM Analytics
        rgeis@kpmanalytics.com

        Amy Crain – via email only
        Arthur J. Gallagher
        amy_crain@ajg.com